IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

ROBERT STAFFORD                                                                              PLAINTIFF

VS.                                                                CIVIL ACTION NO. 2:11cv167-MTP

SHERIFF DUANE DILLON, ET AL.                                                        DEFENDANTS

**OPINION AND ORDER**

THIS MATTER is before the court on the Motion for Summary Judgment [40] filed by the Defendants. Having reviewed the submissions of the parties and the applicable law, the court finds that the Defendants' Motion for Summary Judgment [40] should be granted.

FACTUAL BACKGROUND

Plaintiff Robert Stafford, proceeding *pro se* and *in forma pauperis*, filed his Complaint [1] pursuant to 42 U.S.C. § 1983 on August 11, 2011. Through his complaint, and as clarified during his *Spears*[1] hearing, Plaintiff alleges claims against Defendants Travis Alford, Clifton Carr, Ken Craft, Sheriff Duane Dillon, Larry Montgomery, Sheldon Stogner, and R.T. Caston for the denial of adequate medical treatment in violation of the Eighth Amendment, and alleges a claim for property deprivation against Sheriff Duane Dillon. *See* Omnibus Order [30]; Order [33]. The allegations in Plaintiff's complaint occurred while he was a post-conviction inmate at the Walthall County Jail (the "Jail").[2] Plaintiff is currently incarcerated at the Mississippi State

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place on April 26, 2012. *See* Omnibus Transcript, Ex. C to Motion [40-3].

[2] Plaintiff testified that he was housed at the Walthall County Jail for approximately three or four days. Plaintiff further testified that he was housed at the Jail while awaiting assignment to a state facility. *See* Ex. C to Motion [40-3] at 8.

Penitentiary in Parchman. Plaintiff seeks monetary damages for pain and suffering and for the loss of his property.

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), or unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), are not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983. However, Section

1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers." *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981). Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

<u>Denial of Adequate Medical Treatment</u>

Plaintiff alleges a claim against Defendants Travis Alford, Clifton Carr, Ken Craft, Sheriff Duane Dillon, Larry Montgomery, Sheldon Stogner, and R.T. Caston for the denial of adequate medical treatment in violation of the Eighth Amendment. Specifically, Plaintiff claims he is a diabetic and when his blood sugar gets low, he becomes weak and disoriented. On or about May 4, 2011, he asked R.T. Caston, the Jail Administrator, for some food or something to bring his sugar level up, but R.T. denied his request. Approximately 15-20 minutes later, he fell off the top bunk and injured his back.

Plaintiff claims he sued Sheriff Duane Dillon, Travis Alford, Clifton Carr, Ken Craft, Larry Montgomery, and Sheldon Stogner, because they are "in charge" and "oversee" the Jail.

He claims they should have at least one nurse on staff at the Jail to handle diabetic inmates.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 F. App'x 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 838. Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson*, 91 F. App'x at 965 (quoting *Domino*, 239 F.3d at 756). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm." *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986). The Plaintiff is not entitled to the

4

"best" medical treatment available. *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006). Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

The record reflects that Plaintiff was arrested and booked into the Jail on May 2, 2011. *See* Ex. A to Motion [40-1]. On or about May 4, 2011, Plaintiff slipped when he was climbing into his bunk bed and fell and hit his back and head. Ex. C [40-3] at 11, 17. Deputy Woody Hubert informed R.T. Caston, Jail Administrator, that Plaintiff was lying on the floor and claiming he fell off his bunk. Mr. Caston called an ambulance and Plaintiff was transported to the Walthall General Hospital. Ex. D [40-4]; Ex. B. [40-2]. Plaintiff was examined at the Walthall General Hospital and was found to have two left transverse fractures of the L2 and L3 vertebrae. Ex. B [40-2] at 9. He was also suspected to have active tuberculosis. *Id.* Plaintiff was transferred to Forrest General Hospital in Hattiesburg, Mississippi, where he stayed for approximately three days. Ex. C [40-3] at 18. Plaintiff testified that he did not return to the Jail but was transferred to the Central Mississippi Correctional Facility. *Id.*

As previously stated, prior to his fall, Plaintiff claims he asked someone named "R.T.", a jail supervisor, for some food or something to bring his sugar level up, but R.T. denied his request. R.T. was originally named as a "John Doe" Defendant. On May 1, 2012, defense counsel filed a statement that he believed that "the individual in question is R.T. Caston, Walthall County Jail Administrator." Response [32]. The court entered an Order [33] substituting R.T. Caston for the John Doe defendant.

In his affidavit, R.T. Caston states that he had no direct contact with Plaintiff after

5

booking him on May 2, 2011.  He states that he did not speak with Plaintiff prior to his fall on May 4, 2011, about needing any additional food or any medical care.  After it was reported to him by Deputy Hubert that Plaintiff was lying on the floor and had allegedly fallen off his bunk, R.T. Caston called an ambulance and had Plaintiff transported to the Walthall General Hospital. Ex. D to Motion [40-4].

Mr. Caston states that he has served as Jail Administrator for sixteen years and has housed numerous diabetic inmates.  He claims that when an inmate complains of low blood sugar, their blood sugar is tested.  If their sugar is low, the inmate is given candy or a honey bun to bring their sugar level up; if it is high, they are given insulin.  Had Mr. Caston been made aware that Plaintiff believed his sugar was low, he would have followed the procedure outlined above.  *Id.*

Mr. Caston's sworn statements above are uncontroverted.  Plaintiff failed to respond to the Motion for Summary Judgment [40], despite an Order [42] from the court directing him to do so.  Accordingly, it appears that Mr. Caston is not the individual Plaintiff believes he asked for food to bring his sugar up.  Thus, Mr. Caston is entitled to judgment as a matter of law as to Plaintiff's medical claims.

Alternatively, the court finds that Mr. Caston is entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Mr. Caston has raised the defense of qualified immunity and is thus "entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation." *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007)).  In the recent decision of *Pearson*, the Supreme Court receded from its holding in *Saucier v. Katz*, 533 U.S. 194 (2001) (setting forth original two-prong test above), holding that "while the sequence [of the two-prong test] set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory." *Pearson*, 129 S. Ct. at 818.  "Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions." *McClendon v. City of Columbia,* 305 F.3d 314, 323 (5th Cir. 2002) (*en banc*).

Plaintiff has failed to make it pass the first prong, as he has failed to establish that Mr. Caston violated his constitutional rights.  Specifically, Plaintiff has failed to establish that Mr. Caston knew of and disregarded an excessive risk to his health or safety.  Plaintiff failed to show that Mr. Caston was both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and also drew the inference.  *Farmer*, 511 U.S. at 838.  Accordingly, the court need not address the second prong of the qualified immunity test.

The remaining Defendants are Sheriff Duane Dillon and five Walthall County Supervisors.  Plaintiff testified that he never spoke with Sheriff Dillon or any of the county supervisors, and never wrote them letters or had any other contact with them.  He claims he sued the Sheriff and the Walthall County Supervisors because they are in charge of the Jail and are responsible for what goes on there.  Ex. C [40-3] at 12-15.

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)). Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Plaintiff has failed to establish that Sheriff Duane Dillon or the five Walthall County Supervisors were personally involved in the alleged denial of medical treatment, and has failed to establish a "sufficient causal connection between [their alleged] wrongful conduct and the [alleged] constitutional violation." *Thompkins*, 828 F.2d at 304. As previously stated, there is no respondeat superior liability under Section 1983. *Oliver,* 276 F.3d at 742 & n.6. According to his *Spears* testimony, Plaintiff only sued these Defendants because of their supervisory positions. Moreover, Plaintiff has failed to allege or establish that Walthall County had a policy, custom or practice that was the "moving force" behind the alleged deliberate indifference. *See Monell*, 436 U.S. at 694. Accordingly, Defendants Travis Alford, Clifton Carr, Ken Craft, Sheriff

8

Duane Dillon, Larry Montgomery, and Sheldon Stogner are entitled to judgment as a matter of law.

### Property Deprivation

Plaintiff alleges a claim for property deprivation against Sheriff Duane Dillon. He claims that when he arrived at the Jail, he had certain property, including a watch, wallet, boots, pants, etc. He did not receive a property receipt, and when he was transferred from the Jail, his property was not returned to him. Plaintiff admitted that he never contacted the Jail about these items after his transfer. Ex. C to Motion [40-3] at 22.

In his affidavit, Sheriff Dillon states that it is the Jail's policy to attempt to return all property confiscated during the booking process. Ex. E to Motion [40-5]. Mr. Caston's affidavit reflects that the Jail's policy is to return the confiscated property at the time of release. If the inmate does not take the property, the inmate or his relatives are contacted and informed that they have thirty days to retrieve the property, after which time period the property is destroyed. Ex. D to Motion [40-4].

"Under the *Parratt/Hudson* doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate post-deprivation remedy." *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995) (footnote omitted); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). The *Parratt/Hudson* doctrine applies when: "(1) the deprivation was unpredictable or unforeseeable; (2) predeprivation process would have been impossible or impotent to counter the state actors' particular conduct; and (3) the conduct was unauthorized in the sense that it was not within the officials' express or implied authority." *Smith v. Epps*, 326 F. App'x 764, 765 (5th

Cir. 2009). This doctrine applies whether the random unauthorized deprivations of property were negligent or intentional.  *Daniels*, 474 U.S. at 328; *Hudson*, 468 U.S. at 533.  However, conduct is not considered "random and unauthorized" for purposes of the *Parratt/Hudson* doctrine if the state "delegated to [the defendants] the power and authority to effect the very deprivation complained of."  *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quoting *Zinermon v. Burch*, 494 U.S. 113, 138 (1990)).

It is well-established that neither negligent nor intentional deprivations of property violate due process where there is an adequate state tort remedy available.  *Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  The Fifth Circuit and district courts within the Fifth Circuit have upheld the dismissal of prisoners' suits for property deprivation because of the availability of state law remedies, even where the alleged deprivation of property occurred in violation of a prison's notice and hearing policy.  *See*, *e.g.*, *Myers v. Klevenhage*, 97 F.3d 91, 94-95 (5th Cir. 1996) (*per curiam*) (holding that because adequate post-deprivation state remedy existed, plaintiffs failed to state actionable Section 1983 claim for allegedly unauthorized debits from their prison accounts); *Murphy v. J.A. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994) (prisoner's claim based on confiscation of his property not actionable under Section 1983 because adequate state post-deprivation remedy existed); *Marshall v. Norwood*, 741 F.2d 761, 763-64 (5th Cir. 1984) (where state provided adequate post-deprivation remedy, inmate did not suffer an actionable property loss under Section 1983).

Mississippi provides post-deprivation remedies for both negligent and intentional conversions of property.  *See*, *e.g.*, Miss. Code Ann. § 11-38-1 *et seq.* (claim and delivery); Miss. Code Ann. § 11-37-101 *et seq.* (replevin).  It is Plaintiff's burden to establish that these post-deprivation remedies are not adequate.  *Myers*, 97 F.3d at 94-95 (citations omitted).

Plaintiff has failed to allege, must less provide any evidence, that these remedies are not adequate. Moreover, the Fifth Circuit has held that "Mississippi's post-deprivation remedies for civil IFP litigants satisfy due process." *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994).

Plaintiff has not alleged that the property deprivation was made in accordance with any policy, practice or custom or were in any other way "authorized." *See Smith*, 326 F. App'x at 765. Accordingly, the *Parrat/Hudson* doctrine bars Plaintiff's property deprivation claims under Section 1983. *See Sossamon v. Williams*, 270 F. App'x 323, 325 (5th Cir. 2008) (holding that prisoner's claim was barred by the *Parratt/Hudson* doctrine where there was no genuine issue whether the officer's actions were random and unauthorized and where prisoner had an adequate post-deprivation remedy for the destruction of his property); *Leggett v. Comer*, 280 F. App'x 333, 335 (5th Cir. 2008) (affirming dismissal of prisoner's claim that defendants intentionally failed to comport with prison policy to inventory and secure his property, reasoning that "the *Parratt/Hudson* doctrine explicitly applies to the unauthorized, intentional deprivation of property by a state employee"); *Leggett v. Williams*, 277 F. App'x 498, 500 (5th Cir. 2008); *Carmona v. Branstuder*, 68 F.3d 470, 1995 WL 581807, at *1 (5th Cir. Sept 18, 1995) (dismissing prisoner's property deprivation claim, finding that the deprivation of property was at most, a random act, and prisoner had an adequate state remedy). Thus, assuming that the Plaintiff's property was never returned to him, his remedy lies not in a Section 1983 action, but in a tort claim under state law.

## CONCLUSION

Based on the foregoing, Defendants are entitled to judgment as a matter of law and this action should be dismissed. Accordingly,

IT IS, THEREFORE, ORDERED:

That Defendants' Motion for Summary Judgment [40] is GRANTED and that this action is dismissed with prejudice. A separate judgment will be entered.

SO ORDERED this the 18th day of December, 2012.

                                                  s/ Michael T. Parker
                                                  United States Magistrate Judge